UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY HINES,<br><br>                        Plaintiff,<br><br>           v.<br><br>NORIEGA, et. al.,<br><br>                        Defendants. | No.  2:13-cv-0392 JAM AC P<br><br><br>ORDER & FINDINGS AND<br>RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this action filed pursuant to 42 U.S.C. § 1983.  The sole remaining defendant in this action is Dr. Noriega.  This action proceeds on the first amended complaint, ECF No. 9, for violations of plaintiff's rights under the Eighth Amendment.  ECF No. 9.

PROCEDURAL HISTORY

Plaintiff's original complaint, filed February 27, 2013, alleged that defendants Dr. Noriega, Dr. Goller, and the director of the CDCR violated plaintiff's Eighth Amendment rights when they were deliberately indifferent to plaintiff's serious medical needs.  ECF No. 1.  By order dated May 21, 2013, the court dismissed the director of the CDCR as a defendant.  ECF No. 8 at 5.  Plaintiff was given the option of proceeding against Dr. Goller and Dr. Noriega, or attempting to amend his complaint.  ECF No. 8 at 3-5.  Plaintiff elected to proceed against Dr. Noriega alone and filed a first amended complaint on June 27, 2013.  ECF No. 9.

1

On December 5, 2013, defendant Noriega filed a motion to dismiss the amended complaint for failure to exhaust administrative remedies. ECF No. 18. In light of the Ninth Circuit's decision in Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014), which held that exhaustion issues should in most cases be presented in a motion for summary judgment rather than in a motion to dismiss under Rule 12(b), the court vacated defendant's motion to dismiss by order dated April 10, 2014. ECF No. 24. The court permitted defendant to file a motion for summary judgment on the issue of administrative exhaustion and to re-file the portion of the vacated motion that asserted failure to state a claim in a separate motion or in combination with a motion for summary judgment. On May 14, 2014, defendant filed a motion for summary judgment for failure to exhaust administrative remedies. On July 29, 2014, plaintiff opposed the motion, and on August 26, 2014 defendant replied.

## FACTUAL BACKGROUND

The first amended complaint alleges that defendant Noriega was deliberately indifferent to plaintiff's serious medical needs in relation to an injury plaintiff suffered in 2004 while incarcerated at California State Prison-Solano. Specifically, plaintiff alleges that on April 11, 2004, he was injured while working at his job in the prison laundry when a runaway laundry cart struck plaintiff's left ankle, causing him "great pain." ECF No. 9 at 10. Plaintiff was taken to the Correctional Treatment Center (CTC) and examined by medical staff, who viewed plaintiff's skin laceration and swollen ankle as a "minor injury." Id. Plaintiff was given pain pills and issued a three-day medical lay-in. Id.

On April 12, 2004, plaintiff was referred for x-rays "to see if any bones were broken" in his "now very swollen" foot. ECF No. 9 at 10. The radiologist, Dr. Goller, took a single x-ray and issued a radiology report. Id. at 11.

Dr. Noriega, plaintiff's primary care provider, reviewed the radiograph and radiology report and informed plaintiff that "there were no broken bones to be seen in the radiograph." Id. However, unbeknownst to plaintiff, Dr. Goller's report contained the following additional information:

> An acute osseous injury is identified. The visualized osseous

> structures are intact. The base of the fifth metatarsal is not included on the radiographs. Injury at this location cannot be excluded. If there is clinical concern for an injury at the base of the fifth metatarsal a foot series should be obtained. Impression: No acute osseous injury identified.[1]

Id. Plaintiff complained to Dr. Noriega that he was in severe pain and believed his foot was broken, but Noriega told him that "everything would be alright just as soon as the swelling in [plaintiff's] left ankle went down." Id. Despite being "in excruciating pain and throbbing discomfort," plaintiff trusted Dr. Noriega's diagnosis. Id.

Over the next six years, plaintiff suffered intermittent severe swelling in his foot and excruciating pain. ECF No. 9 at 11. He persistently complained to prison medical staff and on February 10, 2010, his primary care provider, Dr. Pfile, agreed to order additional x-rays of plaintiff's left ankle. Dr. Pfile ordered that the x-rays "be taken in 3 views." Id.

On March 1, 2010, Dr. Goller took x-rays of plaintiff's ankle pursuant to Dr. Pfile's orders. ECF No. 9 at 11. In the resulting report, Dr. Goller "noted (1) an old-well fracture of distal fibula, and (2) mild . . . degenerative changes are present within the ankle." Id. at 11-12. This report "uncovered that the injury plaintiff had suffered back in 2004 had been from a fracture." Id. at 7. Plaintiff was then informed that he would have a permanent limp, which would worsen over time.[2] Id. at 7.

The March 2010 x-rays and subsequent conversations with his doctor led plaintiff to request a copy of his medical file, in which he discovered Dr. Goller's 2004 report indicating that the x-ray taken on April 12, 2004 could not exclude injury in the area not visible in the x-ray. ECF No. 9 at 7.

Plaintiff then filed a series of administrative grievances in relation to his allegation that Dr. Noriega was deliberately indifferent to his serious medical needs when he failed to order additional x-rays of plaintiff's foot in 2004, despite his knowledge that plaintiff's injury could be more severe than Noriega initially diagnosed. ECF No. 9 at 7-8. These grievances were

---

[1] A copy of this report is attached to defendant's motion for summary judgment as Exhibit J. ECF No. 28-3 at 46.

[2] From April 16, 2010 through May 15, 2010, plaintiff's left foot was put into a cast to alleviate the pain and reduce the swelling. ECF No. 9 at 12.

cancelled as untimely on the grounds that they were not filed in 2004.  Id.

The instant action was filed on February 27, 2013.  ECF No. 1.  Plaintiff seeks a declaratory judgment, compensatory and punitive damages, a jury trial, and his costs in the lawsuit.  ECF No. 9 at 14.

DEFENDANT'S SUMMARY JUDGMENT MOTION

**1.  Defendant's Argument**

Defendant moves for summary judgment solely on the ground that plaintiff failed to properly exhaust his administrative remedies within the prison system before filing suit, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).  ECF No. 28-2.  Defendant argues that plaintiff failed to exhaust administrative remedies because all of the grievances he filed in connection with his 2004 deliberate indifference claim were cancelled, and cancelled appeals do not satisfy the exhaustion requirement.  Id. at 8.  Defendant contends that when plaintiff filed his appeals in 2011, they were untimely and thus were properly cancelled as permitted by the applicable CCR regulations.  Id.  Defendant further argues that plaintiff did not complete the exhaustion process because his third level appeal was cancelled and plaintiff did not appeal the cancellation, even though the regulations state that "a cancellation at the third level may itself be appealed."  Id. at 3, 8.

Defendant observes that plaintiff's claim is based entirely on Dr. Noriega's alleged "[failure] to diagnose a broken bone in plaintiff's left ankle/foot area" on April 12, 2004, and provides two arguments in support of his contention that plaintiff's 2011 grievances were untimely.  ECF No. 28-2 at 1, 3.  First, defendant contends that under the regulations in place in 2004, plaintiff was required to submit an appeal "within 15 working days following his visit to Dr. Noriega on April 12, 2004."  Id. at 3.  Since plaintiff did not submit his appeal until February 26, 2011, his appeal was untimely.  Id.

Defendant's second argument recognizes that at the time plaintiff filed his first grievance on February 26, 2011, the deadline for filing administrative grievances had changed.  ECF No. 28-2 at 3.  Under the updated regulations, plaintiff's appeal had to be filed within "30 calendar days of the event or decision, or of first having knowledge of the event being appealed."  Id.

4

Because plaintiff admitted that "he first learned of a fracture 'somewhere' in June of 2010,'" plaintiff's February 26, 2011 grievance was untimely. Thus, under either version of the regulations, plaintiff's appeal was untimely and cancellation was proper. Id.

Defendant contends that because "the evidence and supporting documents establish that there are no disputed issues of material fact" regarding plaintiff's failure to exhaust his administrative remedies, defendant is entitled to summary judgment as a matter of law. ECF No. 28-2 at 6. In the event that defendant's summary judgment motion is denied, defendant requests an evidentiary hearing. Id.

**2. Plaintiff's Opposition**

Plaintiff submitted a memorandum in opposition to defendant's motion for summary judgment, ECF No. 33, as well as a separate document disputing defendant's statement of undisputed facts, ECF No. 31. Plaintiff disputes two of the facts asserted by defendant, but provides support for only one of the denials.[3] ECF No. 31 at 4, 5. In this respect, plaintiff has failed to comply with Rule 56(c)(1)(A) of the Federal Rules of Civil Procedure which requires that "a party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ." The court also notes that plaintiff has not filed a separate statement of disputed facts as required by Local Rule 260(b).

It is well-established that the pleadings of pro se litigants are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam). Nevertheless, "[p]ro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), overruled on another ground by Lacey v. Maricopa County, 693 F.3d 896 (9th Cir. 2012) (en banc). However, the unrepresented prisoners' choice to proceed without counsel "is less than voluntary" and they are subject to the "handicaps . . . detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d 1362, 1364-65 & n.4 (9th Cir. 1986). Inmate litigants, therefore, should not be held to a standard of

---

[3] Plaintiff disputes fact No. 24 and fact No. 35. ECF No. 31 at 4, 5.

5

"strict literalness" with respect to the requirements of the summary judgment rule. Id.

The court is mindful of the Ninth Circuit's more overarching caution in this context, as noted above, that district courts are to "construe liberally motion papers and pleadings filed by pro se inmates and . . . avoid applying summary judgment rules strictly." Ponder, 611 F.3d at 1150. Accordingly, the court considers the record before it in its entirety despite plaintiff's failure to be in strict compliance with the applicable rules. However, only those assertions in the opposition which have evidentiary support will be considered.

In his opposition, plaintiff disputes defendant's contention that plaintiff was required to file a grievance in 2004.[4] ECF No. 33. Plaintiff agrees that the events gave that rise to his deliberate indifference claim occurred in 2004, but argues that he could not have filed a grievance in 2004 because at that time he did not know that his rights had been violated. Id. at 1-2, 6. Specifically, plaintiff asserts that he did not become aware of Dr. Noriega's deliberate indifference until he obtained his medical file and discovered Dr. Goller's 2004 radiology report. See id. at 2, 3, 6; ECF No. 9 (FAC) at 7, 11, 13. Until he learned of this report, plaintiff did not have knowledge that Dr. Noriega knew in 2004 that plaintiff's injury might be more severe, but failed to order the additional x-rays that would have revealed plaintiff's fracture. Id.

Plaintiff also disputes defendant's alternative argument that plaintiff had knowledge of the injury "somewhere in June of 2010" and was therefore required to file an appeal within 30 days of that date. Plaintiff asserts that when he learned "somewhere in June 2010" that his 2004 injury had been a fracture, he still did not know that the failure to diagnose the fracture in 2004 was due to an act of deliberate indifference, by Dr. Noriega or otherwise. ECF No. 33 at 2-4. Plaintiff asserts that as soon as he had knowledge that Dr. Noriega's act of deliberate indifference caused the failure to diagnose his fracture, he subsequently filed a grievance in order to begin the administrative exhaustion process "in good faith." Id. at 3, 4; ECF No. 9 (FAC) at 13.

With respect to the cancellation of his appeals, plaintiff appears to assert that his appeals were improperly screened out and that he was prevented from exhausting his administrative

---

[4] These assertions are also generally alleged in plaintiff's verified first amended complaint. See ECF No. 9 at 6-9.

6

1  remedies.  See ECF No. 33 at 3-4.  Specifically, plaintiff asserts that each appeal was cancelled
2  on the grounds that he should have filed an appeal in 2004 and failed to do so.  Id. at 3; ECF No.
3  9 (FAC) at 7-8.  However, under the applicable regulations, plaintiff had 30 calendar days from
4  when he first had knowledge of the action being appealed, and that under those regulations, his
5  appeal was timely.  ECF No. 9 (FAC) at 8-9.  Furthermore, when his appeals were cancelled,
6  plaintiff was not provided instructions as to how to correct them and was specifically told "Do
7  Not resubmit this appeal."  ECF No. 33 at 4.  As a result, plaintiff "presumed exhaustion" and
8  believed that any further attempts to exhaust "would not only be fruitless, but unduly litigious."
9  Id. at 4.  Plaintiff also appears to assert that he was not required to, or was excused from,
10  appealing the cancellation of his third level appeal.  See id.

11      In sum, plaintiff argues that because he acted diligently in filing his grievances once he
12  had knowledge that his rights were violated, and because these grievances put the prison on
13  notice of his claims, he properly exhausted administrative remedies and defendant's motion for
14  summary judgment should therefore be denied.  ECF No. 5-6.

15      **3.  Defendant's Reply**

16      In his reply, defendant asserts that plaintiff's opposition papers fail to support his claim
17  that he properly filed a grievance or that he should be excused from the exhaustion requirement.
18  ECF No. 36 at 2.  Defendant first takes issue with plaintiff's failure to comply with Local Rule
19  260(b).  Id. at 3.  Defendant points out that plaintiff denied two facts in defendant's statement of
20  disputed facts, but objects on the grounds that plaintiff provided no evidentiary support for the
21  denials.[5]  Consequently, defendant contends that these facts should be deemed undisputed.  Id.
22      Defendant generally reasserts the arguments made in his summary judgment motion and
23  contends that plaintiff's opposition "offers nothing more than allegations unsupported by
24  evidence."  ECF No. 36 at 4.  Defendant asserts that it is clear that plaintiff's first grievance was

---

[5] Without citation to the record, plaintiff disputes fact No. 24, which states: "Plaintiff's first appeal concerning his foot/ankle injury or Dr. Noriega's treatment of same was submitted on February 26, 2011."  ECF No. 33 at 4.
Plaintiff also disputes fact No. 33, which states: "By failing to appeal the cancellation at the third level, Plaintiff failed to exhaust his available administrative remedies."  Next to this fact plaintiff wrote: "Deny.  Section 3084.6(e): appeal of a cancellation is a separate appeal."  Id. at 5.

7

untimely because it was not filed until February 26, 2011, and plaintiff has provided no evidence demonstrating that he should be excused from the exhaustion requirement. Specifically, plaintiff's lack of medical and legal expertise does not excuse him from properly exhausting administrative remedies, plaintiff provided no evidence that he administrative remedies were unavailable to him, and plaintiff "admits that remedies were available to him during the relevant periods." ECF No. 36 at 4, 5.

### 4. Legal Standards for Exhaustion

1. Prison Litigation Reform Act

Section 1997(e) (a) of Title 42 of the United States Code provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a) (also known as the Prison Litigation Reform Act ("PLRA")). The PLRA requires that administrative remedies be exhausted prior to filing suit. McKinney v. Carey, 311 F.3d 1198 (9th Cir. 2002).

Failure to exhaust is "an affirmative defense the defendant must plead and prove." Jones v. Bock, 549 U.S. 199, 204, 216 (2007). "[T]he defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino, 747 F.3d at 1172. "[T]here can be no 'absence of exhaustion' unless *some* relief remains available." Brown v. Valoff, 422 F.3d 926, 937 (9th Cir. 2005). Therefore, the defendant must produce evidence showing that a remedy is available "as a practical matter," that is, it must be "capable of use; at hand." Albino, 747 F.3d at 1171. To bear this burden:

> "a defendant must demonstrate that pertinent relief remained available, whether at unexhausted levels of the grievance process or through awaiting the results of the relief already granted as a result of that process. Relevant evidence in so demonstrating would include statutes, regulations, and other official directives that explain the scope of the administrative review process; documentary or testimonial evidence from prison officials who administer the review process; and information provided to the prisoner concerning the operation of the grievance procedure in this case.... With regard to the latter category of evidence, information provided [to] the prisoner is pertinent because it informs our determination of whether relief was, as a practical matter, 'available.'"

Brown v. Valoff, 422 F.3d 926, 936-37 (9th Cir. 2005) (citations omitted).

8

2. California Regulations Governing "Exhaustion" of Administrative Remedies

Exhaustion requires that the prisoner complete the administrative review process in accordance with all applicable procedural rules. Woodford v. Ngo, 548 U.S. 81 (2006). This review process is set forth in California regulations. Those regulations allow a prisoner to "appeal" any action or inaction by prison staff that has "a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a).

The appeal process is initiated by the inmate's filing a "Form 602," the "Inmate/Parolee Appeal Form," "to describe the specific issue under appeal and the relief requested." Id. § 3084.2(a). Prior to January 28, 2011, an inmate was required to file the initial appeal within 15 working days of "the event or decision being appealed." Cal.Code Regs., tit. 15, §§ 3084.5(a), 3084.6(c) (2009). As of January 28, 2011, an inmate must file the initial appeal within 30 working days of the action being appealed or "upon first having knowledge" of the action being appealed, and he must file each administrative appeal within 30 working days of receiving an adverse decision at a lower level. Cal. Code Regs. tit. 15, § 3084.8(b) (2011).

Each prison is required to have an "appeals coordinator" whose job is to "screen all appeals prior to acceptance and assignment for review." Id. § 3084.5(b). The appeals coordinator may refuse to accept an appeal, and she does so either by "rejecting" or "canceling" it. Cal. Code Regs. tit. 15, § 3084.6(a) ("Appeals may be rejected pursuant to subsection 3084.6(b), or cancelled pursuant to subsection 3084.6(c), as determined by the appeals coordinator").

"Cancellation" is reserved for those appeals which the inmate cannot simply correct. For example, an appeal can be cancelled if the action complained of "is not within the jurisdiction" of the CDCR, or if time limits for submitting the appeal have been exceeded. See id., § 3084.6(c)(1) & (4). Upon "cancellation" of the appeal, the inmate's only recourse, if he still wishes to pursue it, is to show that the reason given for the cancellation was inaccurate or erroneous, or that "new information" now makes it eligible for review. See id., 3084.6(a)(3) (cancelled appeal may later be accepted "if a determination is made that cancellation was made in error or new information is received which makes the appeal eligible for further review").

////

1  According to the regulations, "a cancellation or rejection decision does not exhaust
2  administrative remedies." Id., 3084.1(b).
3  If the appeals coordinator allows an appeal to go forward, the inmate must pursue it
4  through the third level of review before it is deemed "exhausted." Id. § 3084.1(b) ("all appeals
5  are subject to a third level of review, as described in section 3084.7, before administrative
6  remedies are deemed exhausted").

### 5. Legal Standards for Summary Judgment

8  Summary judgment is appropriate when the moving party "shows that there is no genuine
9  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.
10 Civ. P. 56(a).  Under summary judgment practice, the moving party "initially bears the burden of
11 proving the absence of a genuine issue of material fact." Nursing Home Pension Fund, Local 144
12 v. Oracle Corp. (In re Oracle Corp. Securities Litigation), 627 F.3d 376, 387 (9th Cir. 2010)
13 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish
14 this by "citing to particular parts of materials in the record, including depositions, documents,
15 electronically stored information, affidavits or declarations, stipulations (including those made for
16 purposes of the motion only), admission, interrogatory answers, or other materials" or by showing
17 that such materials "do not establish the absence or presence of a genuine dispute, or that the
18 adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ.
19 P. 56(c)(1)(A), (B).
20 When the non-moving party bears the burden of proof at trial, "the moving party need
21 only prove that there is an absence of evidence to support the nonmoving party's case." Oracle
22 Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).
23 Indeed, summary judgment should be entered, after adequate time for discovery and upon motion,
24 against a party who fails to make a showing sufficient to establish the existence of an element
25 essential to that party's case, and on which that party will bear the burden of proof at trial. See
26 Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the
27 nonmoving party's case necessarily renders all other facts immaterial." Id.  In such a
28 circumstance, summary judgment should be granted, "so long as whatever is before the district

court demonstrates that the standard for entry of summary judgment ... is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. Moreover, "[a] Plaintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence." Lopez v. Smith, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc).[6]

The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011) (per

---

[6] Plaintiff filed a verified First Amended Complaint in this case. See ECF No. 9 at 3.

curiam).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. … Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

In applying these rules, district courts must "construe liberally motion papers and pleadings filed by pro se inmates and … avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  However, "[if] a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion …."  Fed. R. Civ. P. 56(e)(2).

### 6.  Undisputed Material Facts Pertaining to Exhaustion[7]

- Plaintiff's first amended complaint concerns a foot/ankle injury sustained on April 11, 2004 and alleges that at broken bone in the foot/ankle area should have been diagnosed by Dr. Noriega on April 12, 2004.  Defendant's Statement of Undisputed Fact in Support of Motion for Summary Judgment ("Facts") (ECF No. 28-3) ¶ 21-22.[8]

- The records of the CDCR's Office of Appeals and the Office of Third Level Appeal Health Care show that plaintiff did not file an appeal concerning the allegations in his complaint at any time in 2004, nor at any time prior to 2011.  Facts ¶ 23.

- On February 26, 2011, plaintiff filed a grievance concerning Dr. Noriega's treatment of his foot/ankle injury.  Declaration of R. Fleischman ("Fleischman Decl.") (ECF No. 28-3) ¶ 12, Exh. A at 13; First Amended Complaint ("FAC") (ECF No. 9) at 7.

////

---

[7] In his motion for summary judgment, defendant attaches copies of the grievances submitted by plaintiff as well as the corresponding cancellation forms.  See ECF No. 28-3, Exh. A-K, at 13-63.  For organizational purposes, the court has included the relevant details from the attached documents in the undisputed facts section.

[8] Where, as here, defendant's Undisputed Facts are supported by the submitted evidence, and not contested by plaintiff, the court cites only to the relevant paragraph of defendant's Undisputed Facts.

- The February 26, 2011 appeal was treated as plaintiff's first appeal.[9] Fleischman Decl. ¶ 12; FAC at 7-8.

- The February 26, 2011 appeal was cancelled as untimely pursuant to Section 3084.6(c)(4).[10] Facts ¶ 25; Fleischman Decl. Exh. B-C at 16-19.[11] The record includes a copy of the cancellation form, on which a box is checked that reads: "Time limits for submitting the appeal are exceeded even though the inmate had the opportunity to submit within the prescribed time constraints. Per 3084.6(c)(4)." Fleischman Decl. Exh. B at 17. The record also includes the related Appeal Screening Form dated April 11, 2011, which contains a notation indicating that "[t]his screening action may not be appealed unless you allege that the above reason[s] is inaccurate." Fleischman Decl. Exh. C at 19.

- On April 22, 2011, plaintiff submitted a letter to the "Health Care Appeals Coordinator Office" in response to the cancellation and return of his February 26, 2011 appeal. Facts ¶ 26; Fleischman Decl. Exh. D at 20-22. The record indicates that in plaintiff's letter, plaintiff alleged that his February 26, 2011 appeal was cancelled for inaccurate reasons. Id. at 21.

- The cancellation was reaffirmed via a CSP-Solano Health Care Appeal Screening Form Cancellation dated April 26, 2011. Facts ¶ 27; Fleischman Decl. Exh. E at 23-24. The record includes a copy of this cancellation form, which indicates that the appeal was canceled because "the action of decision being appealed is not within the jurisdiction of the department" and "time limits for submitting the appeal are exceeded." Handwritten on the cancellation for is a note stating "you cannot appeal something that happened in 2004." The cancellation form also notes that the original appeal was on the wrong form and was not signed. Fleischman Decl. Exh. E at 24.

- By letter dated May 6, 2011, plaintiff was informed that his appeal was being returned for untimeliness and because it was not submitted on approved 602 forms as required under Section 3084.2(a). Facts ¶ 28; Fleischman Decl. Exh. F at 25-26.

- On May 18, 2011, plaintiff submitted another letter concerning his appeal. Facts ¶ 29; Fleischman Decl. Exh. G at 27-28. The record indicates that in his letter, plaintiff alleged that his appeal had been returned "for inaccurate reasons" and stated that he was attempting to exhaust his administrative remedies. Fleischman Decl. Exh. G at 28.

- Plaintiff's May 18, 2011 letter was again screened out via a CSP-Solano Health Care Appeal Screening Form Cancellation dated May 20, 2011. Plaintiff also received a letter dated May 24, 2011 confirming the cancellation of his appeal. Facts ¶ 29; Fleischman

---

[9] Plaintiff asserts that the February 26, 2011 was actually the second appeal he filed, but appears to agree that it was treated as if it were the first appeal he filed. See Fleischman Declr. Exh. D (ECF No. 28-3) at 21-22; FAC (ECF No. 9) at 7-8.

[10] The California regulations relating to the filing of administrative appeals are found at Cal. Code Regs. Tit. 15 §§ 3084-85.

[11] All exhibits referenced herein are attached to the Fleischman Declaration, ECF No. 28-3 at 13-63.

13

      Decl. Exh. H, I at 29-32. The record indicates that the appeal was cancelled because time limits for submitting the appeal were exceeded. The cancellation form contains the following handwritten notation: "3084.6(c) Inmates must submit the appeal within 15 working days of the event. Your event occurred on 4/11/04. <u>Do not</u> resubmit this appeal." "Do not" is underlined three times. Fleischman Decl. Exh. H at 30. The corresponding Appeal Screening Form stated that the appeal was being returned because it was not on the correct forms, the action was not within the jurisdiction of the department, and the time limits for submitting the appeal had been exceeded. It also noted that plaintiff's event occurred in 2004 and that plaintiff should not resubmit the appeal. Fleischman Decl. Exh. I at 32.

- On June 3, 2011 plaintiff submitted an additional letter and request for third level review. Facts ¶; Fleischman Decl. Exh. J at 33-49.

- Plaintiff's repeated submittals were treated as a third level appeal. On July 18, 2011, the Office of the Third Level of Appeals upheld the lower level cancellation of plaintiff's appeal. Facts ¶ 31; Fleischman Decl. Exh. K at 50-51. The record indicates that July 18, 2011 letter stated as follows: "This appeal was cancelled previously at the lower level, in that the time limits for submitting the appeal were exceeded, even though you had the opportunity to submit within the prescribed time constraints. This appeal is cancelled based on CCR, Title 15, Section 3084.6(c)(3)." Fleischman Decl. Exh. K at 51.

- Plaintiff did not appeal the cancellation of his appeal at the third level of review. Facts ¶ 33.

- A system for filing administrative grievances or appeals was in place in 2004 and in 2010.[12] Facts ¶¶ 34-35; Fleischman Declr. ¶¶ 20-21, Exh. L, M at 52-63.

The parties spend the majority of their briefs addressing the issue of when plaintiff's appeal had to be filed in order to be timely and whether it was proper for plaintiff's appeals to be cancelled. There is no dispute that plaintiff submitted documents that were treated as appeals at all three levels of review; that the appeal was cancelled at each level of review; and that plaintiff did not appeal the cancellation of his appeal at the third level of review. Therefore, the only legal

---

[12] Defendant's Undisputed Facts state that "plaintiff had administrative remedies available to him" in 2004 and in 2010. Facts ¶¶ 34-35. Defendant cites to the Fleischman declaration, which states only that true and copies of the relevant portions of Title 15 are attached. Exh. L, M. While plaintiff "admits" facts 34 and 35 in his opposition to defendant's undisputed facts, it is clear from his opposition papers that he admits only that these were these regulations in place in 2004 and 2010, and does not admit that administrate remedies were "available" in the legal sense. Accordingly, the court does not view the statement that "administrative remedies were available" as undisputed. See Ponder, 611 F.3d at 1150 (district courts are to "construe liberally motion papers and pleadings filed by pro se inmates and . . . avoid applying summary judgment rules strictly").

14

question to be resolved is whether administrative remedies were effectively unavailable due to improper screen outs. See Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010).

**7. Factual Dispute**

    **a. Plaintiff's Version of Exhaustion Evidence**

The majority of plaintiff's exhaustion evidence is related to establishing when plaintiff had knowledge of the event that forms the basis of his deliberate indifference claim and explaining why he did not file an appeal until 2011.[13] ECF No. 33. Plaintiff alleges that in 2004, he did not have knowledge that his rights had been violated and had no reason to suspect that Dr. Noriega had been deliberately indifferent to his serious medical needs regarding his ankle/foot injury. Plaintiff was first put on notice that his 2004 injury had been a fracture when he received the results of the x-rays taken on March 1, 2010. However, at this time he did not know who was responsible for the failure to diagnose his fracture in 2004 or that the failure to diagnose the fracture was due to deliberate indifference.

After receiving the March 1, 2010 x-ray results, plaintiff had a number of meetings with his physician and learned that he "would forever have a limp."[14] After he learned of this information "somewhere in June of 2010," plaintiff requested his medical file.[15] Once he received his medical file, plaintiff investigated and researched the file.[16] During his investigation of the file, he discovered Dr. Goller's report from 2004, indicating that the x-ray taken in 2004 did not show the entire ankle/foot and that injury in the area not visible in the x-ray could not be ruled out. Dr. Noriega had reviewed this report in 2004. It was not until plaintiff found Dr.

---

[13] The exhibits attached to the complaint indicate that plaintiff asserts that the first appeal he submitted with respect to the instant action was placed in the appeal box on January 10, 2011. Plaintiff alleges that this appeal was never returned to him or otherwise responded to and plaintiff alleges that it was intentionally discarded or misplaced. See Fleischman Declr. Exh. D at 21-22. However, for reasons that will be discussed below, the court does not find this alleged discrepancy to be material to the analysis.

[14] It is not clear from the record whether plaintiff received the March 1, 2010 x-ray results on March 1, 2010 or at some later date. However, it appears that he received the results prior to April 16, 2010 because his FAC indicates that from April 16, 2010 through May 15, 2010, his left foot was put into a cast to alleviate the pain and reduce the swelling. ECF No. 9 at 12.

[15] Plaintiff does not indicate the specific date that he requested his medical file.

[16] Plaintiff provides no dates with respect to these allegations.

15

1  Goller's report that plaintiff had knowledge that Dr. Noriega failed to order additional x-rays

2  despite his knowledge that plaintiff's injury might be more severe. Once plaintiff had this

3  knowledge, he filed his administrative appeal. ECF No. 33.

4  Regarding the cancellation of his appeals, plaintiff asserts that when his initial appeal was

5  filed on February 26, 2011, the applicable regulations permitted inmates 30 calendar days from

6  the date they first had knowledge of the event that forms the basis of the appeal to file their initial

7  appeal. Plaintiff asserts that under these regulations his appeal was timely. ECF No. 33.

8  With respect to defendant's assertion that plaintiff could have appealed the cancellation of

9  his appeal at the third level of review, plaintiff cites section 3084.6(e) and asserts that "the appeal

10  of a cancellation is a separate appeal." ECF No. 31 at 5.

11  **b. Defendant's Version of Exhaustion Evidence**

12  Defendant asserts that the first appeal plaintiff filed in this matter was the appeal dated

13  February 26, 2011. Defendant asserts that plaintiff's appeal was properly screened out as

14  untimely because the regulations in place in 2004 permitted an appeal to be cancelled on

15  timeliness grounds if it was not filed within 15 working days of the event being appealed.

16  Defendant does not dispute (nor admit) that following plaintiff's x-rays on March 1, 2010,

17  plaintiff had a number of meetings with his physician and requested his medical file, in which he

18  discovered Dr. Goller's report. Rather, defendant uses these facts to argue that plaintiff "admits"

19  that plaintiff had knowledge "somewhere in June of 2010" that his 2004 injury was a fracture.

20  Accordingly, defendant contends that even using this date, plaintiff's 2011 appeal was untimely

21  because it was not filed within 30 days of the date he first had knowledge of the event that forms

22  the basis of his appeal.

23  **8. Analysis**

24  The court must determine whether plaintiff exhausted his administrative remedies

25  regarding his claims prior to the date he filed the complaint, and if not, whether plaintiff may be

26  excused from the pre-filing exhaustion requirement. See Sapp, 623 F.3d at 823–24. In order to

27  defeat defendants' motion, plaintiff must demonstrate that there are truly genuine and material

28  disputes over whether he actually exhausted available remedies or as to whether he should be

excused from the exhaustion requirement.

Defendant's undisputed evidence establishes that plaintiff filed an initial grievance, two letters contesting the cancellation of his initial grievance, and a third level appeal, all of which were cancelled. "A cancellation . . . decision does not exhaust administrative remedies." Cal. Code Regs. tit. 15, § 3084.1(b). Therefore, plaintiff did not properly exhaust his claim. See Woodford v. Ngo, 548 U.S. 81 (2006) (exhaustion requires that the prisoner complete the administrative review process in accordance with all applicable procedural rules).

Since defendant has met his initial burden of establishing non-exhaustion, the burden shifts to plaintiff to come forward with evidence showing that something in his particular case made the existing administrative remedies unavailable to him. See Albino, 747 F.3d at 1172. In order to meet this burden, plaintiff challenges the basis for the screen out of his appeals. The propriety of the screen out matters because, if prison officials improperly screened out his appeal, he could not properly complete the grievance process and administrative remedies would be effectively unavailable. See Sapp, 623 F.3d at 822–23). To satisfy this exception to exhaustion, the prisoner must show: "(1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations." Id. at 823–24.

With respect to the first prong, "[a] grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress." Sapp, 623 F.3d at 824. Plaintiff's grievances alerted the prison to the nature of his complaint regarding Dr. Noriega's deliberate indifference. In his initial grievance, plaintiff explained his initial injury, reproduced the text of Dr. Goller's 2004 report indicating that the x-ray taken in 2004 could not exclude injury in the portion of the foot not visible in the x-ray, and alleged that Dr. Noriega reviewed Dr. Goller's report but acted improperly by simply telling plaintiff that "everything would be all right as soon as the swelling went down." Plaintiff explains he experienced pain and swelling in his left ankle for the next six years until a 2010 x-ray revealed that his 2004 injury was a fracture. Construed in the light most favorable to plaintiff, these allegations were sufficient

1  to alert the prison to the nature of plaintiff's complaint regarding the inadequate treatment
2  provided by Dr. Noriega.  Plaintiff's initial grievance therefore would have sufficed to exhaust his
3  claim against Dr. Noriega.  Furthermore, the court notes that plaintiff did not stop pursuing his
4  administrative remedies after his initial appeal was cancelled.  Rather, he continued attempting to
5  exhaust his administrative remedies by filing two letters contesting the cancellation of his first
6  grievance, as well as a third level appeal.  The first prong is satisfied.

7  Under the second prong of the unavailability exception, plaintiff must show that his
8  appeals were screened out for improper reasons, i.e. for reasons inconsistent with or unsupported
9  by applicable regulations.  Sapp, 623 F.3d at 823–24.  The essence of plaintiff's argument is that
10 the appeals office erred in relying on the 2004 date when they screened out his appeal.

11 Plaintiff's initial grievance was filed on February 26, 2011.  The regulations in effect on
12 February 26, 2011 provided, in relevant part, that an inmate "must submit the appeal within 30
13 calendar days of (1) the occurrence of the event or decision being appealed, or (2) upon first
14 having knowledge of the action or decision being appealed . . ." Code Regs. tit. 15, § 3084.8(b).
15 Despite this provision, plaintiff's appeals were cancelled on the grounds that he "cannot appeal
16 something that happened in 2004."  However, because the regulations permitted the filing period
17 to run from the date plaintiff first had knowledge of the action being appealed, it was improper
18 for the appeals office to conclude that plaintiff had to file in 2004 simply because the event took
19 place in 2004.  Plaintiff has come forward with evidence that he did not have knowledge of Dr.
20 Noriega's indifference in 2004 and did not gain the requisite knowledge until 2010 when he
21 discovered Dr. Goller's 2004 radiology report.  Because plaintiff did not have knowledge in 2004
22 of Dr. Noriega's alleged acts of deliberate indifference, the reliance on the 2004 date as grounds
23 for cancellation is "unsupported by the applicable regulations."

24 In an attempt to rebut plaintiff's evidence, defendant argues that plaintiff learned
25 "somewhere in June of 2010" that the 2004 injury was a fracture.  But defendant does not address
26 plaintiff's assertion that at that time he still did not have knowledge that Dr. Noriega's deliberate
27 indifference caused the failure to diagnose the fracture.  Moreover, even if defendant could
28 establish that plaintiff had knowledge of Dr. Noriega's deliberate indifference in June of 2010,

1 this would not affect the propriety of the screen out of plaintiff's grievances because they were
2 not screened out on that basis. As discussed above, plaintiff's grievance were screened out as
3 untimely because they were not filed in 2004, not because they were not filed within thirty days
4 of plaintiff's 2010 discovery of Dr. Noriega's deliberate indifference.

5 In sum, plaintiff has brought forth evidence that his appeals were screened out for reasons
6 unsupported by the applicable regulations, which permitted a grievance to run from the time
7 plaintiff first had knowledge of the conduct to be grieved. It is clear from the arguments of the
8 parties that they dispute the date plaintiff first had knowledge of the conduct at issue. The court
9 finds that on this record, a reasonable trier of fact could find that plaintiff did not have knowledge
10 of Dr. Noriega's deliberate indifference in 2004, making it improper for his appeals to be
11 cancelled on the grounds that he did not file in 2004. Thus, there is genuine issue of material fact
12 as to whether administrative remedies were effectively unavailable so as to properly exhaust
13 plaintiff's appeal concerning Dr. Noriega's conduct. As a result, defendant is not entitled to
14 summary judgment on this issue.

15 Finally, to the extent defendant alleges that plaintiff was required to appeal the third level
16 cancellation of his appeal, defendant has failed to show that such an appeal was required for
17 exhaustion purposes. Defendant asserts that "a cancellation at the third level may itself be
18 appealed" and provides a citation to section 3084.6(f), which states that "the application of the
19 rules provide in subsection 3084.6(c) to the cancelled appealed *may* be separately appealed." §
20 3086.6(f) (emphasis added). However, the quoted language is permissive and defendant provides
21 no authority demonstrating that a third level cancellation *must* be appealed in order to satisfy the
22 exhaustion requirement. Furthermore, because all of plaintiff's prior grievances were cancelled
23 on the grounds that they were not filed in 2004, it is likely that any appeal of the third level
24 cancellation would have been denied on the same grounds. Thus, plaintiff's failure to appeal the
25 third level cancellation is excused because pursuit of such an appeal would have been futile. See
26 Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir.2012) (exhaustion requirement can be waived
27 where pursuing administrative remedies would be futile).

28 Because defendant did not establish that plaintiff had available administrative remedies in

this action, plaintiff is excused from the exhaustion requirement.  Accordingly, the undersigned recommends that defendant's motion for summary judgment on administrative exhaustion grounds be denied.

Accordingly, IT IS HEREBY ORDERED that:

Defendant's request for an evidentiary hearing is denied.

It is further RECOMMENDED that:

Defendant's motion for summary judgment (ECF No. 28) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court, which shall be captioned "Objections to Magistrate Judge's Findings and Recommendations."  **Due to exigencies in the court's calendar, no extensions of time will be granted.**  A copy of any objections filed with the court shall also be served on all parties.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 9, 2015

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE