UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY HINES,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>NORIEGA, et al.,<br><br>　　　　　　Defendants. | No.  2:13-cv-0392 JAM AC P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. 1983.  Presently before the court is defendant Noriega's motion for summary judgment.  ECF No. 46.

　　　　I.　　Factual and Procedural Background

This action proceeds on the first amended complaint against defendant Dr. A. Noriega, the sole remaining defendant.  The complaint alleges that defendant Noriega was deliberately indifferent to plaintiff's serious medical needs in relation to an injury plaintiff suffered in 2004 while incarcerated at California State Prison-Solano.  Specifically, plaintiff alleges that on April 11, 2004, he was injured while working at his job in the prison laundry when a runaway laundry cart struck plaintiff's left ankle.  ECF No. 9 at 10.  On April 12, 2004, an x-ray was taken of plaintiff's left ankle.  Id. at 11.  Plaintiff alleges that defendant Dr. Noriega reviewed the radiology report and informed plaintiff that "there were no broken bones to be seen in the

radiograph" and that everything would be fine once the swelling in plaintiff's ankle went down. Id. However, over the next six years, plaintiff continued to experience pain and swelling in his foot. Id.

The complaint further alleges that in 2010, plaintiff's then primary care physician ordered x-rays of plaintiff's left foot, which allegedly revealed that the injury plaintiff suffered in 2004 was a fracture. Id. at 7. Plaintiff's foot was put in a cast, and plaintiff was informed that he would have a permanent limp. Id. at 7, 12. Plaintiff later discovered that the April 12, 2004 radiology report indicated that plaintiff's fifth metatarsal was not visible in the 2004 x-ray, and that the x-ray therefore could not exclude injury at that location. Id. at 11. Plaintiff asserts that defendant Noriega acted with deliberate indifference in failing to order additional x-rays and failing to diagnose plaintiff's fracture, thereby causing plaintiff years of unnecessary pain and suffering. Id. at 7, 11, 13.

On May 14, 2014, defendant Noriega filed a motion for summary judgment on the grounds that plaintiff failed to properly exhaust administrative remedies prior to filing suit.[1] ECF No. 28. Plaintiff opposed the motion, asserting that he exhausted the administrative remedies that were available to him.[2] ECF No. 33.

On March 9, 2015, the undersigned issued findings and recommendations finding that defendant failed to establish that plaintiff had administrative remedies available to him, and recommending that defendant's summary judgment motion be denied. ECF No. 37. The findings and recommendations were adopted in full by the district judge on June 10, 2015. ECF No. 39.

On June 19, 2015, defendant Noriega answered the complaint, ECF No. 40, and the parties proceeded to conduct discovery.

On February 18, 2016, defendant filed the instant motion for summary judgment. ECF

---

[1] Plaintiff's grievances had been screened out as untimely on the grounds that they were not filed in 2004. See ECF No. 37 at 19.
[2] Plaintiff asserted that he could not have filed a grievance in 2004 because did not discover defendant Noriega's deliberate indifference until 2010 when he learned that he had previously suffered a fracture and discovered the April 12, 2004 radiology report. See ECF No. 37 at 6 (summarizing plaintiff's exhaustion argument).

No. 46.  Plaintiff filed a response, ECF No. 49, and defendant filed a reply, ECF No. 49.

## II. Motion for Summary Judgment

### A. Defendant's Argument

Defendant Noriega argues that summary judgment is appropriate because he was not deliberately indifferent to plaintiff's serious medical needs when he treated plaintiff on April 11, 2004.  ECF No. 46-2 at 2.  Specifically, defendant asserts that he provided plaintiff with comprehensive medical care at the Triage Clinic on April 11, 2004 when he dressed plaintiff's wound, prescribed pain medication, ordered x-rays of plaintiff's lower left leg and ankle, and directed plaintiff to follow up with the Annex Clinic after his x-rays were taken.  Id.  Defendant asserts that plaintiff's April 12, 2004 follow up visit was with Dr. Rallos in the Annex Clinic, not with defendant, and that defendant did not review plaintiff's April 12, 2004 x-rays.  Id. Defendant asserts that he was not involved in plaintiff's follow up care and did not see plaintiff again regarding his ankle injury.  Id.  In support of his motion for summary judgment, defendant provides the declaration of Dr. B. Barnett, who opines that defendant's treatment of plaintiff on April 11, 2004 was medically acceptable under the circumstances and that, in any event, additional x-rays of plaintiff's foot would not have revealed the fracture to plaintiff's distal fibula visible in the 2010 x-ray.  See ECF No. 46-7.  In the alternative, defendant argues he is entitled to qualified immunity.  Id.

### B. Plaintiff's Argument

In opposition to defendant's motion for summary judgment, plaintiff submitted a response to defendant's statement of undisputed facts, a memorandum in opposition to defendant's motion for summary judgment, and plaintiff's own declaration.  ECF No. 49.  At the outset, the court notes that plaintiff has failed to file a separate statement of disputed facts, as required by Local Rule 260(b).  However, it is well-established that the pleadings of pro se litigants are held to "less stringent standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam).  Nevertheless, "[p]ro se litigants must follow the same rules of procedure that govern other litigants."  King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), overruled on other grounds, Lacey v. Maricopa Cnty., 693 F.3d 896 (9th Cir. 2012) (en banc).

1 However, the unrepresented prisoners' choice to proceed without counsel "is less than voluntary"
2 and they are subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as
3 "limited access to legal materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d
4 1362, 1364-65 & n.4 (9th Cir. 1986). Inmate litigants, therefore, should not be held to a standard
5 of "strict literalness" with respect to the requirements of the summary judgment rule. Id.

6       The court is mindful of the Ninth Circuit's more overarching caution in this context, as
7 noted above, that district courts are to "construe liberally motion papers and pleadings filed by
8 *pro se* inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder,
9 611 F.3d 1144, 1150 (9th Cir. 2010). Accordingly, the court considers the record before it in its
10 entirety despite plaintiff's failure to be in strict compliance with the applicable rules. However,
11 only those assertions in the opposition which have evidentiary support in the record will be
12 considered.

13       The court first notes that the contentions set forth in plaintiff's opposition differ slightly
14 from those contained in the amended complaint. In his verified amended complaint, plaintiff
15 asserted that defendant knew or should have known, based on the April 12, 2004 radiology report,
16 "that plaintiff's injury could not be discerned by the single x-ray, and that further x-rays were
17 recommended by the radiologist." ECF No. 9 at 13. Plaintiff further asserted that defendant
18 knew or should have known, based on plaintiff's ongoing complaints of severe pain and swelling,
19 "that plaintiff's injury might be more severe than he originally diagnosed." Id. Plaintiff asserted
20 that defendant's failure to order further x-rays and to diagnose his injury constituted deliberate
21 indifference. See id. at 7, 13.

22       In his opposition to defendant's summary judgment motion, plaintiff first clarifies that he
23 did not intend to allege that he met with defendant on April 12, 2004 or that his post x-ray follow
24 up visit was with defendant. Rather, plaintiff states that he "believes he met with [defendant]
25 after the results of the April 12, 2004 x-rays were reported . . . but remains unsure of the exact
26 date." ECF No. 49 at 8. Plaintiff then goes on to assert that defendant's treatment of plaintiff on
27 April 11, 2004 was "cursory" rather than comprehensive, and that to the extent defendant failed to
28 follow up on plaintiff's medical care, defendant was negligent. Id. at 7, 9. Plaintiff asserts that

defendant ignored plaintiff's objectively serious medical needs and "took no action to ensure or establish that no more serious injuries were present before releasing plaintiff." Id. at 10-11. Plaintiff maintains that defendant's actions caused plaintiff six years of pain and suffering, as well as a permanent disability. Id. at 10-11.

### III.     Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing

party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). Moreover, "[a] Plaintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence." Lopez v. Smith, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc).[3]

The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. V. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to

---

[3] Plaintiff filed a verified complaint in this case. ECF No. 9.

1  demonstrate a genuine issue, the opposing party "must do more than simply show that there is
2  some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations
3  omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the
4  non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391
5  U.S. at 289).

### IV. Legal Standards Governing Eighth Amendment Claims

In order to state a §1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendant possessed a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 298-99 (1991); McKinney v. Anderson, 959 F.2d 853, 854 (9th Cir. 1992). The requisite state of mind for a medical claim is "deliberate indifference." Hudson v. McMillian, 503 U.S. 1, 5 (1992).

"A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting Estelle, 429 U.S. at 104), overruled on other grounds WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc). Examples of a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Id. at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989)).

In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court established a very demanding standard for "deliberate indifference." "While poor medical treatment will at a certain point rise to the level of constitutional violation, mere malpractice, or even gross negligence, does not suffice." Wood, 900 F.2d at 1334. Even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient to establish an Eighth Amendment violation. Farmer, 511 U.S. at 837 & n.5. It is not enough that a

7

reasonable person would have known of the risk or that a defendant should have known of the risk. Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004). Rather, deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an excessive risk to inmate health and safety." Id. (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted).

A physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir.1989). A failure to *competently* treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. Id. However, "[a] difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi, 391 F.3d at 1058. To establish a difference of opinion rises to the level of deliberate indifference, plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996). Furthermore, in cases involving complex medical issues where plaintiff contests the type of treatment he received, expert opinion will almost always be necessary to establish the necessary level of deliberate indifference. Hutchinson v. United States, 838 F.2d 390 (9th Cir.1988).

V. Undisputed Material Facts

The court finds the following fact to be undisputed:

- At all times relevant to the complaint, plaintiff was in an inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR") and was housed at California State Prison-Solano ("CSP-SOL") in Vacaville, California. Defendant's Statement of Undisputed Facts ("DSUF") (ECF No. 46-3) at ¶ 8.[4]

---

[4] Where, as here, defendant's Undisputed Facts are supported by the submitted evidence, and not seriously contested by plaintiff, the court cites only to the relevant paragraph of defendant's Undisputed Facts.

- Plaintiff's amended complaint alleges that he was injured on April 11, 2004, when a laundry cart being pushed by another inmate struck plaintiff on his left ankle. DSUF ¶ 11.

- Defendant Noriega was a licensed medical doctor and was previously employed by CDCR as a physician and surgeon at CSP-SOL. DSUF ¶¶ 1-2. Defendant Noriega retired as of June 2009. DSUF ¶ 7.

   A. 2004 Events

- In April 2004, defendant Noriega was assigned to the Triage Clinic. DSUF ¶ 3.

- The Triage Clinic sees inmates with acute injuries and medical emergencies. DSUF ¶ 4. The Triage Clinic functions like an emergency room of a hospital in that it provides inmates with immediate and urgent care only, and otherwise refers inmates to immediate outside care, the prison infirmary, or to the prison Annex Clinic for follow up and/or primary care. DSUF ¶ 5.

- On April 11, 2004, plaintiff saw defendant Noriega at the Triage Clinic on an urgent basis due to a work-related injury in his ankle/lower leg. DSUF ¶ 14.

- Plaintiff complained to defendant Noriega of pain in his lower left leg/ankle. DSUF ¶ 14. Defendant declares that plaintiff did not complain of foot pain on April 11, 2004 or on any other day.[5] Declaration of Dr. A. Noriega ("Noriega Decl.") (ECF No. 46-5) at 3, ¶ 6.

- Defendant Noriega conducted a physical examination of plaintiff. DSUF ¶ 16.

- The interdisciplinary progress notes from the April 11, 2004 visit indicate that plaintiff complained of pain in his lower left leg/ankle, that plaintiff had an abrasion and a superficial laceration on his lower left leg, and that plaintiff's lower leg was intact. Noriega Decl. at 3, ¶ 5.

- During the April 11, 2004 visit, defendant gave plaintiff a tetanus toxoid injection to prevent tetanus, applied a dressing to plaintiff's wound,[6] and ordered a dressing change and wound care every two days for ten days to prevent infection. DSUF ¶¶ 17, 19-20; ECF No. 49 at 3. Defendant also prescribed Motrin for pain three times a day for five

---

[5] Plaintiff initially appears to admit that he did not complain of foot pain on April 11, 2004, and argues that whether he complained of leg/ankle pain versus foot pain is immaterial because it was defendant's duty as a doctor to determine the source of plaintiff's pain. See ECF No. 49 at 3. However, plaintiff later states that he "denies that he did not also [complain of] foot pain" when he saw defendant on April 11, 2004. See id. at 9.

[6] It is not clear whether the dressing was applied to plaintiff's abrasion or laceration, or to the ankle itself. Plaintiff admits that a dressing was applied, but purports to dispute whether the dressing was applied to plaintiff's "injury." See ECF No. 49 at 3. However, because the parties appear to agree that defendant applied a dressing to plaintiff's left ankle area, where plaintiff apparently had an abrasion and laceration, the undersigned finds it undisputed that defendant applied a dressing to plaintiff's wound.

days and issued a three-day lay-in order. DSUF ¶¶ 21-22.

- Defendant ordered an x-ray of plaintiff's left lower leg and ankle, and issued orders for plaintiff to follow up in the Annex Clinic once the x-ray of his left ankle and lower left leg were completed. Noriega Decl. at 4, ¶ 7; ECF No. 49 at 3.[7] See also id. at 15.

- On April 12, 2004, an x-ray of plaintiff's left ankle was taken, pursuant to defendant Noriega's April 11, 2004 orders. DSUF ¶ 31.

- The April 12, 2004 radiology report interpreting plaintiff's x-ray, signed by radiologist Dr. Goller, states as follows:

    ORDERING M.D./OTHER:   Noriega

    TYPE OF X-RAY:               Left ankle

    DATE OF X-RAY:               4-12-04

    INDICATION:                     Injury, pain.

    FINDINGS: An acute osseous injury is identified.[8] The visualized osseous structures are intact. The base of the fifth metatarsal is not included in the radiographs. Injury at this location cannot be excluded. If there is a clinical concern for an injury at the base of the fifth metatarsal a foot series should be obtained.

    IMPRESSION:         No acute osseous injury is identified.

    ECF No. 46-5 Exh. D at 15.

- On April 12, 2004, plaintiff saw Dr. Tesie R. Rallos for a post x-ray follow up visit with the Annex Clinic. DSUF ¶ 34.

- Dr. Rallos ordered a dressing change, Epson salt, a topical analgesic twice per day for 30 days, and Motrin (800 mg twice per day with food for 30 days). Noriega Decl. at ¶¶ 14-15.

- Dr. Rallos' notes indicate that no fracture was found in the x-ray image of plaintiff's left ankle. Id. at ¶ 14; id. Exh. A at 9; Declaration of B. Barnett ("Barnett Decl.") (ECF No. 46-7) at ¶ 8.

- Because defendant Noriega was assigned to the Triage Clinic in April 2004, he would not have seen plaintiff for his post x-ray follow-up visit. DSUF ¶ 29.

---

[7] While defendant states that he ordered "x-rays" of plaintiff's left ankle/lower leg area, plaintiff asserts that only "a single x-ray of the ankle and lower foot" was ordered. See ECF No. 49 at 3.

[8] As will be explained further, it appears that the first sentence of Dr. Goller's report may contain a typographical error regarding whether or not an acute osseous injury was identified.

10

- Defendant Noriega was not plaintiff's primary care physician on or around April 11, 2004, or anytime thereafter.[9] Noriega Decl. at ¶ 11.

- Defendant Noriega declares that he did not review the April 12, 2004 radiology report to interpret the report or assign any follow up care as a result of the radiology report.[10] Noriega Decl. at ¶ 13. Defendant declares that he reviewed the April 12, 2004 report for the first time as part of the instant litigation. Id.

- Defendant declares that, except for the examination on April 11, 2004, he did not see plaintiff again concerning any ankle injury or other condition related to his lower extremities.[11] Noriega Decl. at ¶ 17.

- Defendant Noriega declares that his physician's orders were issued in a good faith effort to determine the extent of plaintiff's injuries and to alleviate his pain and discomfort. Noriega Decl. ¶ 19.

B. 2010 Events

- On February 10, 2010, Dr. Pfile ordered x-rays of plaintiff's left foot and left ankle. The x-rays were taken on March 1, 2010. See ECF No. 46-7 at 17, 19.

- The radiology report interpreting the March 1, 2010 x-rays of plaintiff's "left foot, 3 views," signed by radiologist Dr. Goller, states:

    CLINICAL HISTORY: Pain.

    COMPARISON: 01/31/2008.

    FINDINGS: Mild degenerative changes are present. No fracture or dislocation is seen.

    IMPRESSION:

    1. Mild osteoarthritis.

    2. No acute osseous injury.

ECF No. 46-7 Exh. P at 17.

---

[9] Plaintiff initially purports to dispute whether defendant Noriega was plaintiff's primary care physician in April 2004. See ECF No. 49 at 10. However, plaintiff later clarifies that by alleging defendant was his "primary care physician," he meant that defendant was the first doctor to examine plaintiff with respect to the injuries plaintiff sustained on April 11, 2004. See id.

[10] While plaintiff alleged in his verified complaint that defendant reviewed the April 12, 2004 radiology report, plaintiff does not appear to have personal knowledge of this fact. However, as will become clear, other facts alleged by plaintiff suggest that defendant may have reviewed the report.

[11] Plaintiff asserts that he met with defendant at some point after April 12, 2004 and complained to him of severe pain. See ECF No. 9 at 11.

11

- The March 1, 2010 x-ray of plaintiff's left foot did not reveal a fracture in any part of plaintiff's foot, including the fifth metatarsal.  Barnett Decl. at ¶ 9.

- The radiology report interpreting the March 1, 2010 x-rays of plaintiff's "left ankle, 3 views," signed by radiologist Dr. Goller, states:

    CLINICAL HISTORY:  Pain.

    FINDINGS:  An old, well-healed fracture of the distal fibular diaphysis is present.  Mild degenerative changes are present within the ankle.  No acute fracture or dislocation is seen.

    IMPRESSION:

    1. Old, well-healed fracture of the distal fibula.

    2. Mild osteoarthritis.

    ECF No. 46-7 Exh. P at 17.

    C.  Review of Plaintiff's 2004 and 2010 X-Rays

- Dr. B. Barnett is employed by California Correctional Health Care Services as Chief Medical Officer for the Receiver's Office of Legal Affairs.  Barnett Decl. at ¶ 1.  Dr. Barnett reviewed plaintiff's medical records to determine whether the fracture in plaintiff's distal fibula should have been diagnosed on April 12, 2004.  See id. ¶ 3.

- Dr. Barnett opines that the April 12, 2004 report indicates a negative x-ray result, even though the first sentence of the report states that "an acute osseous injury is identified."  Dr. Barnett explains that when a fracture is identified in an x-ray, the radiology report will indicate the location of the fracture.  Barnett Decl. at ¶ 8.  Because the report does not identify the location of any fracture, and the report concludes by stating that "no acute osseous injury is identified," it is Dr. Barnett's opinion that the April 12, 2004 radiology report indicates a negative x-ray, meaning that there was no fracture found in the x-ray image.  Id.

- Dr. Barnett declares that further imaging of the fifth metatarsal would not have revealed any fracture to the fibula since the metatarsals and fibula are completely separate parts of the human skeletal structure.  Barnett Decl. at ¶ 9.  Specifically, the fibula is a small bone of the lower leg, while metatarsals are the five bones which connect the phalanges to the remainder of the foot.  DSUF ¶ 36.

- Dr. Barnett opines that "[b]ecause the April 12, 2004 radiology report indicates negative findings for the x ray examination of the left ankle, it is most likely that the fracture to [plaintiff's] fibula occurred sometime after April 11, 2004 and when seen [*sic*] in 2010."  Barnett Decl. at ¶ 10.

- However, Dr. Barnett declares that it "is possible that [plaintiff] sustained a hairline

12

fracture on April 11, 2004 which was not evident on the April 12, 2004 x rays but only became available upon healing." Id. at ¶ 11. Dr. Barnett explains that this is because "[h]ealing creates a thickening of bone and calcification that often makes an inapparent hairline fracture visible weeks after the occurrence of an injury." Id.

- According to Dr. Barnett, the March 1, 2010 x-ray of plaintiff's ankle "did not indicate any malunion, misalignment, or other complication from the fracture." Id.

- Based on his review of the medical records, his training and experience, and pertinent medical literature, it is Dr. Barnett's professional medical opinion that defendant Noriega provided plaintiff with appropriate, safe, and proper medical care on April 11, 2004, and that the care provided was consistent with community standards for best medical practice.[12] Barnett Decl. at ¶ 5.

VI. Plaintiff's Evidence

In his verified amended complaint, plaintiff alleges that, at some point after his April 12, 2004 x-ray was taken, he complained to defendant Noriega "that he was in severe pain and believed that his foot was broken." See ECF No. 9 at 11. "[O]n each occasion, [defendant Noriega] responded by informing plaintiff that there were no broken bones to be seen in the radiograph, and that everything would be alright just as soon as the swelling in his left ankle went down." Id. Plaintiff alleges that he was "forced to hop out of defendant Noriega's office in excruciating pain and throbbing discomfort, trusting in" defendant's diagnosis of plaintiff's injuries. Id.

Plaintiff alleges that over the next six years, he experienced "intermittent and severe swelling of his foot, excruciating pain, and sometimes relentless suffering." ECF No. 9 at 11. In February 2010, plaintiff's then primary care provider, Dr. Pfile, "agreed to order x-rays of plaintiff's left ankle" in response to plaintiff's "incessant complaining of persistent pain." Id. The x-rays were taken by Dr. Goller on March 1, 2010.[13] Id.

Plaintiff alleges that from April 16, 2010 through May 15, 2010, plaintiff's left foot "was put into a cast by [a podiatrist, Dr. Smith], in order to alleviate the pain and reduce the swelling in

---

[12] Because the records do not reflect that defendant saw plaintiff for a post x-ray follow up visit on April 12, 2004, Dr. Barnett was unable to render an opinion as to whether defendant provided plaintiff with appropriate medical care after April 11, 2004. See Barnett Decl. ¶ 6.
[13] The results of the March 1, 2010 x-rays are detailed above. See infra.

1  plaintiff's ankle."[14]  Id. at 12.  Plaintiff alleges that he was at some point informed that he "would

2  forever have a limp and that as he got older, the condition would worsen."  Id. at 7.

3       VII.   Discussion

4       It is undisputed that, at all times relevant to this action, plaintiff's pain in his left ankle

5  and/or left foot was a serious medical need within the meaning of the Eighth Amendment.  See

6  McGuckin, 974 F.2d at 1059-60.  At issue is whether defendant Noriega was deliberately

7  indifferent to plaintiff's serious medical need when he treated plaintiff following plaintiff's April

8  11, 2004 injury and failed to order additional x-rays of plaintiff's ankle and foot.

9       Plaintiff appears to assert that (1) the treatment defendant provided on April 11, 2004 was

10  inadequate; (2) defendant should have ordered additional x-rays once he reviewed the April 12,

11  2004 radiology report; and (3) defendant should have ordered additional x-rays after plaintiff

12  continued to complain of pain and swelling in his ankle and/or foot.  The court addresses each

13  argument in turn.

14       A.  April 11, 2004 Examination and Treatment

15       Defendant's evidence establishes that when defendant saw plaintiff in the Triage Clinic on

16  April 11, 2004, defendant examined plaintiff, gave him a tetanus shot, dressed his wound,

17  prescribed pain medication, ordered an x-ray of plaintiff's left ankle, and ordered follow up care

18  with the Annex Clinic after plaintiff's x-rays were taken.  Defendant declares that he provided

19  treatment in a good faith effort to determine the extent of plaintiff's injuries and to alleviate his

20  pain and discomfort, and defendant's treatment decisions are supported by the declaration of Dr.

21  Barnett, who declares that in his professional medical opinion, the care provided by defendant on

22  April 11, 2004 was medically acceptable under the circumstances and consistent with community

23  standards for best medical practice.  The court finds that defendant has met his initial burden of

24  demonstrating an absence of evidence to support plaintiff's claim that defendant was deliberately

25  indifferent to plaintiff's serious medical needs on April 11, 2004.  Accordingly, the burden shifts

---

[14] Although plaintiff does not provide any medical records in support of this statement, plaintiff has personal knowledge of whether his foot was put into a cast.

to plaintiff as the non-moving party to establish that a "genuine issue as to any material fact actually does exist."

Plaintiff asserts that defendant's examination was "cursory at best" and that the treatment provided was akin to what might be provided to "a child who scraped [his] knee on a rusty nail." ECF No. 49 at 9.  However, to the extent plaintiff asserts that defendant should have conducted a more thorough medical examination or ordered additional x-rays at that time, plaintiff's disagreement with defendant's chosen course of treatment is insufficient to support a claim of deliberate indifference.  See Sanchez, 891 F.2d at 242.  Plaintiff has brought forth no evidence suggesting that the treatment provided by defendant on April 11, 2004 was medically unacceptable under the circumstances.  See Jackson, 90 F.3d at 332.  Because there is no evidence defendant acted with deliberate indifference when he examined and treated plaintiff on April 11, 2004, defendant is entitled to summary judgment on this claim.

### B.  April 12, 2004 Radiology Report

The evidence establishes that an x-ray of plaintiff's left ankle was taken by Dr. Goller on April 12, 2004.  Before addressing plaintiff's argument, the court first considers the apparent contradiction in the April 12, 2004 radiology report regarding whether a fracture or other injury was identified in the x-ray.  While the first sentence of the report states "*an* acute osseous injury is identified," the "impression" at the conclusion of the report states that "*no* acute osseous injury is identified."  See ECF No. 46-5 Exh. D at 15 (emphasis added).  In light of Dr. Barnett's explanation that a radiology report will indicate the location of a fracture if a fracture is identified, the report's failure to identify the location of any fracture, the "impression" stating that no osseous injury is identified, and Dr. Rallos' x-ray follow up notes indicating that the x-ray was negative, the undersigned finds that the only reasonable interpretation of Dr. Goller's report is that no fracture was identified in the April 12, 2004 x-ray.  Plaintiff does not appear to argue otherwise.

Plaintiff argues that the April 12, 2004 report "recommended" additional x-rays and that defendant acted with deliberate indifference by failing to order additional x-rays after reviewing the report.  At the outset, the court notes that the parties dispute whether defendant Noriega

reviewed the April 12, 2004 radiology report. Defendant declares that aside from treating plaintiff at the Triage Clinic on April 11, 2004, he did not see plaintiff again concerning his ankle injury and did not review the April 12, 2004 report interpreting the x-ray of plaintiff's left ankle. However, on summary judgment, the court must take as true plaintiff's allegation that, at some point after April 12, 2004, plaintiff met with defendant Noriega, who assured plaintiff that there were no broken bones visible in the radiograph and that "everything would be alright" once the swelling in plaintiff's ankle went down.[15] ECF No. 9 at 11. Construed in plaintiff's favor, defendant's comment regarding the radiograph gives rise to the reasonable inference that defendant reviewed plaintiff's April 12, 2004 radiology report and was aware of its contents.

The April 12, 2004 report interpreting plaintiff's x-ray indicates that the fifth metatarsal is not visible in the x-ray; that injury at that location could not be excluded; and that further x-rays should be ordered if there was a clinical concern for an injury at the base of the fifth metatarsal. To the extent plaintiff asserts that defendant acted with deliberate indifference by not ordering additional x-rays of plaintiff's foot after he reviewed the April 12, 2004 report, plaintiff's argument is premised on his implicit assumption that additional x-rays of plaintiff's foot would have revealed the fracture to plaintiff's distal fibula discovered in 2010. However, defendant's evidence establishes that an x-ray of the fifth metatarsal would not have revealed a fracture to the distal fibula, as the metatarsals and fibula are completely separate parts of the human skeletal structure. Defendant's assertion that imaging of the fifth metatarsal would have no bearing on plaintiff's fractured distal fibula is further supported by the fact that it was the 2010 x-ray of plaintiff's ankle, and not the x-ray of plaintiff's foot, that later revealed the fracture to plaintiff's distal fibula.

Furthermore, while plaintiff asserts that Dr. Goller's report "recommended" additional x-

---

[15] In his declaration, plaintiff explains that he "believes that he met with Dr. Noriega concerning the facts alleged in the Amended Complaint" after April 11, 2004, but is uncertain of the exact date. ECF No. 49 at 12. To the extent defendant asserts that plaintiff's statement should be disregarded because it was made on information and belief, ECF No. 50-1 at 1-2, defendant's objection is overruled. In any case, the court relies here on the allegations contained in plaintiff's verified amended complaint, ECF No. 9, not plaintiff's declaration.

1  rays, the report states only that a foot series was recommended *if* there was a clinical concern for
2  injury at the base of the fifth metatarsal. Plaintiff has no evidence to suggest that he ever
3  sustained an injury at the base of the fifth metatarsal. Thus, even assuming that defendant
4  Noriega reviewed the April 12, 2004 radiology report and was aware that the fifth metatarsal was
5  not visible in the single x-ray image, there is no evidence to suggest that defendant acted with
6  deliberate indifference by failing to order an x-ray of plaintiff's foot, as such an x-ray would not
7  have revealed a fracture to plaintiff's distal fibula. Moreover, to the extent plaintiff disagrees
8  with defendant's decision not to order an x-ray of plaintiff's foot, plaintiff has no evidence to
9  suggest that defendant's failure to order a foot series was medically unacceptable under the
10 circumstances. See Jackson, 90 F.3d at 332.

11 Because there is no evidence that defendant acted with deliberate indifference by failing to
12 order additional x-rays of plaintiff's left foot in order to obtain imaging of the fifth metatarsal,
13 defendant is entitled to summary judgment on this claim.

### C. Plaintiff's Complaints of Ongoing Pain

15 Plaintiff asserts that after the initial x-ray of his left ankle was taken on April 12, 2004,
16 plaintiff complained to defendant Noriega that he was in "severe pain and believed that his foot
17 was broken." ECF No. 9 at 11. Plaintiff asserts that defendant knew or should have known,
18 based on plaintiff's complaints of ongoing pain, that plaintiff's injury might be more severe than
19 initially believed, and that defendant acted with deliberate indifference when he failed to order
20 additional x-rays. While defendant maintains that he did not see plaintiff again concerning
21 plaintiff's April 11, 2004 injury, the court must take as true plaintiff's allegation that he informed
22 defendant Noriega of his ongoing pain.

23 The evidence establishes that the March 1, 2010 x-ray of plaintiff's left ankle, taken in
24 three views, revealed an old, well-healed fracture of plaintiff's distal fibula. Presumably,
25 plaintiff's argument is that if defendant had ordered additional x-rays of plaintiff's left ankle in
26 2004,[16] the fracture to his distal fibula would have been discovered and treated at an earlier date,

---

[16] Although it is not entirely clear, it appears that in 2004 defendant Noriega ordered a single x-
(continued…)

1  sparing plaintiff years of pain and suffering. This argument assumes that the fracture to the distal
2  fibula occurred on April 11, 2004.
3        Dr. Barnett opines that because the fracture is not visible in the April 12, 2004 x-ray, it is
4  most likely that the fracture to plaintiff's fibula occurred sometime after April 11, 2004.
5  However, Dr. Barnett acknowledges the possibility that plaintiff sustained a hairline fracture on
6  April 11, 2004 which was not evident on the April 12, 2004 x-ray, but only became available
7  upon healing. The undersigned finds that even assuming that the fracture visible in the 2010 x-
8  ray existed in 2004 and that additional x-rays of plaintiff's ankle in 2004 would have revealed the
9  fracture, plaintiff has failed to support his claim that defendant acted with deliberate indifference
10 by not ordering additional x-rays when plaintiff complained of ongoing pain.
11       Plaintiff essentially asserts, based on Dr. Pfile's decision to order x-rays of plaintiff's
12 ankle in three views in 2010 in response to plaintiff's complaints of pain, that defendant Noriega
13 acted with deliberate indifference by failing to do the same in 2004. The fact that Dr. Pfile
14 decided to order additional x-rays of plaintiff's ankle while defendant Noriega did not amounts to
15 no more than a difference of opinion between medical professionals regarding the appropriate
16 course of treatment. A difference of opinion between medical professionals regarding the
17 appropriate course of treatment is not enough to establish a deliberate indifference claim. See
18 Sanchez, 891 F.2d at 242; Toguchi, 391 F.3d at 1058. In order to establish that a difference of
19 medical opinion rises to the level of deliberate indifference, plaintiff must show that defendant's
20 actions were medically unacceptable under the circumstances. See Jackson, 90 F.3d at 332.
21 Plaintiff has no such evidence. Even assuming that defendant was negligent in failing to order
22 additional x-rays of plaintiff's ankle in response to plaintiff's complaints, negligence or
23 malpractice does not violate the Eighth Amendment. See Estelle, 429 U.S. at 105–06; Toguchi,
24 391 F.3d at 1059.
25       Because there is no evidence that defendant acted with deliberate indifference by failing to

---

ray of plaintiff's left ankle, while in 2010 Dr. Pfile ordered the same x-ray in three views. Construing the facts in plaintiff's favor, the court assumes for the purposes of this motion that defendant Noriega ordered only a single x-ray of plaintiff's ankle in 2004.

order further x-rays of plaintiff's left ankle, defendant is entitled to summary judgment on this claim.

### VIII.  Conclusion

Plaintiff's allegations against defendant Noriega amount to no more than a difference of opinion as to how best to treat his ankle and/or foot pain.  The undersigned therefore recommends that defendant's motion for summary judgment be granted and judgment be entered for defendant.  Because the court finds there was no violation of plaintiff's Eighth Amendment rights, it declines to address defendant's qualified immunity argument.

### IX.  Summary

It is recommended that defendant Noriega's motion for summary judgment be granted. Plaintiff's complaint that defendant Noriega failed to order additional x-rays amounts to a difference of opinion regarding appropriate medical treatment, and is not deliberate indifference. Even if defendant was negligent, negligence is not deliberate indifference.

### CONCLUSION

In accordance with the above, IT IS HEREBY RECOMMEDED that defendant's motion for summary judgment (ECF No. 46) be granted for the reasons set forth above and judgment entered for defendant.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court, which shall be captioned "Objections to Magistrate Judge's Findings and Recommendations."  **Due to exigencies in the court's calendar, no extensions of time will be granted.**  A copy of any objections filed with the court shall also be served on all parties.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 18, 2016

_/s/ Allison Claire_
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE